Michael Jude Pate
Law Offices of Jude Pate & David Voluck
P.O. Box 6384
Sitka, Alaska 99835
(907) 747-2814
(907) 747-2834 fax
jude@ptialaska.net

RECEIVED

FEB 1 5 2006

CLERK, U.S. DISTRICT COURT
JUNEAU, ALASKA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

MARY MILLER, AS PERSONAL
REPRESENTATIVE FOR THE
ESTATE OF SARAH JAMES

          Plaintiff,

     vs.

THE SOUTHEAST ALASKA
REGIONAL HEALTH
CONSORTIUM,
MT. EDGECUMBE HOSPITAL
AND DEPARTMENT OF HEALTH
& HUMAN SERVICES, UNITED
STATES OF AMERICA,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. J04-0014CV (RRB)

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

The Defendants have moved for summary judgment pursuant to FRCP 56. The primary thrust of the Defendants' motion is that by failing to identify or produce a medical expert to support her claim, Ms. Miller has failed to meet the legal and evidentiary requirements for her "medical malpractice" claims under Alaska law

Law Offices of Jude Pate & David Voluck
P.O. Box 6384, 320 Seward Street, Sitka, Alaska 99835
Phone: (907) 747-2814  Fax: (907) 747-2834

which entitles the Defendants to dismissal of the claims.  For the reasons explained below, the Defendants' motion for summary judgment should be denied.

## II.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.  The moving party need not present evidence; it needs only point out the lack of any genuine dispute as to material fact. *Gallant v. United States*, 392 F.Supp.2d 1077, 1079 (Dist. Alaska, 2005).

Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial. All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant. However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial. *Id.*

## III.    Facts

Sarah James was brought to the emergency room at the Defendants' hospital December 4, 2000, after she had fallen at home and was admitted for observation. Deposition of Dr. Conley at 4.  At the time of admission Ms. James was "quite

1    demented and it waxed and waned. Sometimes she was in contact with what was

2    going around, on around her and sometimes she wasn't felling contact, particularly

3    at night." Deposition of Dr. Conley at 5. Ms. James was prone to "sundowning"

4    at times wandering, getting lost and forgetting their surroundings. Deposition of

5    Dr. Conley at 6.

6

7    In addition, at the time of admission Ms. James was known to have been suffering

8    from severe deafness. Deposition of Dr. Conley at 7. Ms. James was also

9    observed to have been suffering from delirium at the time of admission which is

10    usually characterized by agitation, screaming; sometimes by uncontrolled actions,

11    moving around, running, fleeing, things of action. Deposition of Dr. Conley at 8

12    and 9.

13

14    Dr. Thomas Conley personally made the above observations, among others, as a

15    part of Ms. James admission to the hospital – and prior to the fall that Ms. James

16    suffered that is the subject of this litigation. On that day at 4:00 p.m. Dr. Conley

17    made the following orders and notes: "patient deaf and tends to sundown"; "threat

18    to wander and fall." Deposition of Dr. Conley at 12-13. Plaintiff's Exhibit 1, page

19    12.

20

21    Ms. James was subjected to x-rays upon her admission which demonstrated no

22    existing fracture of her hip. After Dr. Conley saw Ms. James in the emergency

23    room, sending her up for x-rays, looking the x-rays, he was called back a short time

24    later because Ms. James had fallen out of bed. Deposition of Dr. Conley at 15.

25

1  At the time that Ms. James fell out of bed, she was not under constant or "1 on 1"
2  observation.  Deposition of Dr. Conley at 21.    She was not in a "posey vest."
3  Deposition of Dr. Conley at 25.    There was a bed alarm attached to the bed which
4  was working appropriately when Ms. James was assisted to the bathroom at 5:30
5  p.m.. .Ms. James fell from bed at 6:30 p.m.  Deposition of Dr. Conley at 27.
6  Plaintiff's exhibit 1, page 22.  Apparently, there were no witnesses to Ms. James fall,
7  and Dr. Conley certainly did not witness the fall.   Deposition of Dr. Conley at 28
8  and 29.

10  While the nurse's notes indicated the bed alarm was working properly when Ms.
11  James attempted at 5:30 p.m. to get of bed to go to the bathroom on her own, the
12  nurse's notes are silent as to whether the bed alarm functioned properly when Ms.
13  James fell from bed at 6:30 p.m.  Deposition of Dr. Conley at 27.  Plaintiff's exhibit
14  1, page 22

16  A bed alarm is a useful tool for alerting nursing staff when somebody is starting to
17  wander.  Deposition of Dr. Conley at 62.  It operates like a dead man switch to a
18  train or outboard motor.  Deposition of Dr. Conley at 27.

20  After Ms. James fell, x-rays revealed that she had suffered a broken hip.
21  Deposition of Dr. Conley at 29.    After Ms. James fell out of bed, she was placed
22  in a "posey vest."  Deposition of Dr. Conley at 23.  She was also then placed under
23  1/1 observation.   Plaintiff's Exhibit 1, page 13.

1    Dr. Conley stated that the word "iatrogenic" means "physician caused."

2    Deposition of Dr. Conley at 39. The Defendants' records for Sarah James state her

3    past medical history as "Status post iatrogenic fracture of the right hip in December

4    of 2000." This entry was made by Defendants' physician, Dr. Elliot Bruhl.

5    Deposition of Dr. Conley at 40. Plaintiff's Exhibit 2, page 3. Dr. Conley admitted

6    it was possible, given his use of the word "iatrogenic," that it was Dr. Bruhl's

7    opinion that the hospital was responsible for Ms. James' hip fracture. Deposition

8    of Dr. Dr. Conley at 41.

9

10   The hospital policies state that identification of the patient's fall risk assessment

11   shall be noted on the Patient Care Plan and safety measures identified. Nursing

12   Services Policy Manual, Page 3-13. Defendants' discovery page 1775. Ms. Miller

13   has been unable to locate any such assessment that was conducted prior to the fall

14   that broke Ms. James' hip.

15

16   The hospital policies state that the "Fall Risk Data Collection form or the

17   Observation Flow Sheet" should be used to collect data on patient compliance with

18   safety measure and to document patient activities when safety devices are used.

19   Nursing Services Policy Manual, Page 7-9. Defendants' discovery page 1851. Ms.

20   Miller has been unable to locate any such written documentation that existed or

21   was made prior to the fall that broke Ms. James' hip.

22

23   The hospital policies state that it is the duty of hospital staff to record the patient's

24   behavior that necessitated a safety device, when the devices were applied and

25   removed, and the type of device use. Nursing Services Policy Manual, Page 7-61.

Defendants' discovery page 1903. With the exception of the bed alarm that functioned at 5:30 p.m. (and apparently did not function at 6:30 p.m.), Ms. Miller has been unable to locate any such written documentation that existed or was made prior to the fall that broke Ms. James' hip.

## IV.    Argument

The tortuous conduct alleged occurred in Sitka, Alaska. Thus the Court should apply the law of Alaska regarding the elements of proof for a claim of negligence. 28 U.S.C. §1364(b) and 2674.    The Defendants argue that Ms. Miller's claim must fail because she lacks supporting expert testimony.   Under Alaska law, however, there are two reasons why expert testimony is not required in this case, and the Defendants' motion for summary judgment denied.

First, the action brought by Ms. Miller falls within the exception requiring expert testimony in a medical malpractice claims:  This case presents a non-technical situation where negligence would be evident to lay people.  Second, is that the claim has not been characterized and is not properly treated as "medical malpractice" action, and the strictures of AS 9.55.540 do not apply and there is no requirement for expert testimony.  Either way – at least for purposes of the Defendants' motion – the result is the same.

### A.    The negligence alleged would be evident to lay people

In medical malpractice actions the jury ordinarily may find a breach of professional duty only on the basis of expert testimony." An exception to this rule is that expert testimony is not needed in non-technical situations where negligence is evident to

1  lay people. *Gallant v. United States*, 392 F.Supp.2d 1077, 1080 (Dist. Alaska, 2005).

2

3  In *Kendall v. State, Division of Corrections,* the Alaska Supreme Court held that "[i]n
4  medical malpractice actions ... the jury ordinarily may find a breach of professional
5  duty only on the basis of expert testimony." The primary exception to this rule is
6  if the negligence claimed would be evident to lay people. Thus plaintiffs are
7  required by law to support his claim with expert testimony unless the causation of
8  his alleged injury was of a non-technical nature. *Parker v. Tomera*, 89 P.3d 761, 766
9  (Alaska, 2004).

10

11  Unlike the claims by the plaintiffs in *Parker* and *Gallant*, the present action by Ms.
12  Miller is a situation where negligence would be evident to a lay person. *Gallant*
13  involved complex question of medical expertise related to stress on a compromised
14  immune system. *Parker* involved similarly complex matters of expertise related to
15  claims that a catheterization had caused sexual dysfunction.

16

17  Ms. Miller's case presents simple questions: Did the hospital follow its own
18  policies and procedures? Did the hospital adequately safeguard and supervise Ms.
19  James? Such matters are well within the ability of a lay person to understand and
20  evaluate without the need of expert testimony.

21

22  Ms. Miller has produced evidence in the above in the discussion of facts that
23  despite Dr. Conley's evaluation of Ms. James as a quite demented individual with a
24  threat to wander and fall, the hospital did not take adequate steps to provide for
25  her safety. Moreover, the hospital apparently failed to follow its own policies that

1  would have documented the measures necessary to protect Ms. James prior to the

2  fall that broke her hip.  Finally, there is the admission of the hospitals' own doctor

3  that the injury to Ms. James was "iatrogenic," or physician caused.

4

5       **B.    This action is not properly treated as "medical malpractice"**

6  The plaintiff in *D.P. v. Wrangell General Hospital* relied upon the exception to the

7  general rule in medical malpractice actions provides that "the jury ordinarily may

8  find a breach of professional duty only on the basis of expert testimony."  5 P.3d

9  225, 228.  (Alaska 2000).  The plaintiff in that action did not allege that the

10  defendants failed to appreciate her mental health status, to recognize a risk of harm

11  to her, or to order reasonable precautions.    She instead faults the defendants'

12  failure to follow the ordered precautionary measures.  *Id.*  The Alaska Supreme

13  Court stated: "It remains far from clear that D.P.'s case should be viewed as a

14  "medical malpractice" action.   Most courts characterize cases in which the plaintiff

15  alleges a failure to adequately supervise and safeguard the patient as involving

16  "ordinary negligence" issues. *Id.* at 228-29.

17

18  The Court went on to note that in Alaska, medical malpractice actions are governed

19  entirely by statute. "Alaska Statute 09.55.536(a) sets forth specific procedural

20  requirements for medical malpractice cases.   Under this section, either the parties

21  must submit a malpractice claim to arbitration or the court must appoint an expert

22  advisory panel within twenty days of the answer to the complaint.    Neither

23  occurred here.   Moreover, the superior court recognized that the parties had failed

24  to treat the action as one for medical malpractice." *Id.*

25

1  The Court continued: "In view of the numerous authorities holding that a jury
2  may readily determine whether patients known to be a risk to themselves have been
3  adequately supervised, we hold that D.P.'s claims do not raise "strict" medical
4  malpractice issues requiring expert testimony.    Whether the hospital exercised
5  reasonable care in supervising D.P. represents a factual question for the jury's
6  resolution under an ordinary negligence framework.    We therefore hold that it was
7  error to require D.P. to present expert testimony regarding the hospital's alleged
8  breach of its duty of care. *Id.*

10  Ms. Miller has never characterized her complaint as "medical malpractice." Until
11  this motion for summary judgment, neither of the parties had treated the action as
12  "medical malpractice." The gist of Ms. Miller's complaint has been and is that the
13  hospital failed to adequately supervise a patient who was a known risk to herself –
14  and apparently failed to follow its own policies for patient safety and evaluation.
15  For these reasons, Ms. Miller's case is comparable to that of the plaintiff *D.P. v.*
16  *Wrangell General Hospital*, and expert testimony should not be required to
17  demonstrate the breach of the duty of care.

**V.    Conclusion**

For the reasons given above, the Defendants' motion for summary judgment should be denied and the matter scheduled for trial.

Respectfully submitted this 13th day of February, 2006,

s/  Michael Jude Pate
Michael Jude Pate
Attorney for Plaintiff
Email:  jude@ptialaska.net
AK Bar# 9409079

**CERTIFICATION**

The undersigned certifies that a copy of this document was delivered February 13, 2006, by electronic mail to opposing counsel, Daniel Cooper at:

**Daniel.Cooper@usdoj.gov**

Executed at Sitka, Alaska this 13th day of February, 2006.

s/ Michael Jude Pate
MJ Pate