DEBORAH M. SMITH
Acting United States Attorney

DANIEL R. COOPER, JR.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
daniel.cooper@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MARY MILLER, as personal representative of the Estate of Sara James<br><br>  Plaintiff,<br><br>v.<br><br>SOUTHEAST ALASKA REGIONAL HEALTH CONSORTIUM, MT. EDGECUMBE HOSPITAL, and DEPARTMENT OF HEALTH and HUMAN SERVICES,<br><br>  Defendants. | Case No. 1:04-cv-014-RRB<br><br>DEFENDANTS' REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT |

    The Defendants moved for Summary Judgment, to which the plaintiff entered her Opposition. This is the defendants' reply.

Ms. Miller argues that her action is not a "medical malpractice" action, and even if it were, the action would fall within the "common knowledge" exception to the requirement in a medical malpractice action for the use of expert testimony to establish the standard of care and breach of that standard. These arguments fail for the reasons set forth below.

A.   Undisputed facts.

Sarah James was admitted to the Mt. Edgecumbe Hospital on December 4, 2000. She was known to be at risk for wandering and falling. She was placed in a bed with the rails up and a bed alarm attached. She fell out of the bed and broke her hip. She died over a year later. The reasons for her death as set forth on the death certificate are cardiopulmonary arrest, dehydration/malnutrition and dementia.[1]

Although Miller alleges that she has not found a fall risk assessment[2] or documents concerning collection of data on patient compliance with safety measures and to document patient activities when safety devices are used,[3] Miller has received both sets of documents. In Exhibit 1 to her Opposition to the Motion

---

[1] See, Exhibit B to Defendants' Motion for Summary Judgment.

[2] Opposition to Motion for Summary Judgment, p. 5, lines 10 - 14.

[3] Opposition to Motion for Summary Judgment, p. 5, lines 16 - 21.

for Summary Judgment, pages 16 through 19 of the exhibit comprise the Nursing Admissions Data Base Interdisciplinary Adult Patient Information form.[4] Towards the bottom on the third page of that document is a section captioned "Injury Potential" that includes a fall risk assessment.[5] The first page of this document also indicates it was filled out by Nurse Sam at 1700 hours on December 4, 2000, approximately one and a half hours before James fell. Miller must have overlooked this information in preparing her Opposition.

Likewise, the Observation Flow Sheets have been provided to Miller in discovery, and are included as attachments to Nurse Blanchette's Affidavit in support of the Defendants' Motion for Summary Judgment. The Observation Flow Sheets are marked HHS 874 - 876. Nurse Blanchette's Affidavit addresses these pages in paragraph 7 where she states:

> 7. The policy requires that all patients be assessed for injury potential at the time of admission. (See, MTEH 1850, ¶ 1.). This was done for Mrs. James. HHS 800 - 803. Her fall assessment (MTEH 1850, ¶ 4.) was performed at HHS 802. She was placed in a bed with all four rails up, a bed monitor, and visual checks every 15 minutes. HHS 812, 874. The call light was in reach according to the Nursing Observation Safety Assessment (HHS 874. Code J is present from her

---

[4] The title of the document is found in the lower right hand corner of page 1.

[5] This page, also marked as HHS 802, is identified by Nurse Blanchette in her affidavit in paragraph 7 as being the Fall Risk Assessment. See, Affidavit of Nurse Ida M. Blanchette filed in Support of Defendants' Motion for Summary Judgment.

>admission on the floor on December 4, 2000 up through the time of her fall at 1830).

Once again, Miller must have overlooked these documents when preparing her Opposition.

>B.   The negligence alleged is *not* evident to lay people.

The argument by Ms. Miller that the "negligence alleged would be evident to lay people" begs the question. The argument assumes the premise that a lay person would understand the relationship of restraint (and the varying levels of restraint) and patient supervision to patient safety. The argument also assumes the premise that the lay person is familiar with the medical necessity of restraints in certain situations, but not in others. The argument is a logical fallacy.

To prove up this argument, Miller must show that these two areas (among others) must be common knowledge. That is, Miller must offer up some evidence that it is common knowledge that restraints are only ordered by a physician, and only are permitted to be ordered, upon a determination made by the physician, that the restraints are medically necessary.[6] Moreover, Miller must offer up some

---

[6] Attached as Exhibit A to this Reply are all 4 pages of the Mt. Edgecumbe Hospital Nursing Services Policy Manual covering "Safety Devices Application." Miller in her Opposition only attached the last page of this policy section (See, Exhibit 4, p. 4, Document 36-5). On page one of this policy, the last sentence of paragraph one provides "A physician order must be obtained and renewed per policy for the use of restraints." Paragraph 2 provides, *inter alia*, "Nursing personnel who have 24 hour responsibility for

evidence that a lay person has knowledge that is both common and equivalent to that of a nurse to make a risk assessment of a patient's fall potential, and the knowledge of the various safety devices and methods available to minimize fall risk.

For example, she must show (or at least argue persuasively) that it is "common knowledge" that the following devices are available to assure patient safety: arm restraint, leg restraints, soft restraints, hard restraints, bed rails, and bed alarms. That list is not complete, of course, because it does not mention "Posey vests" in particular as a type of soft restraint that does not involve tying or restraining a limb. The list is also incomplete because it does not even mention limb restraints, much less whether one point, two point or four point restraints. Moreover, the list also ignores the methodologies of nursing care available to assure patient safety such as observation (or in laymen's terms, "supervision").[7] Observation can be one on one (or 1:1 in the parlance of Mt. Edgecumbe Hospital),

---

patient care are in the best position to determine Fall Risk as related to the nursing diagnosis potential for injury."

[7] The list is also incomplete because it does not include the use of medication as a form of restraint. Here, medication was administered to James in the ER to calm her, and was ordered on the ward by Dr. Conley to calm her as well. See, Deposition of Dr, Conley, p. 11, line 8 - p. 12, line 7, p. 13, lines 4 - 15; Exhibit 1 to the Opposition to Motion for Summary Judgment, page 12.

Miller v. SARHC, et.al.
1:04-cv-0014-RRB                                       -5-

or periodic (such as every 15 minutes, or once an hour, and so on).

Miller must also demonstrate that it is common knowledge in which order such restraints are to be considered for application.  That is, Miller must show that, first, lay persons are aware that the least restrictive restraints must be used first for that particular patient at that particular time in the course of their treatment before most restrictive means are permitted to be utilized, and second, the order of application from lesser to greater restraint.  Moreover, Miller must demonstrate that it is common knowledge amongst lay people when and under what circumstances restraints are to be increased or decreased in terms of restrictiveness.

To sustain this argument then, the court must be sure we can take the first twelve jurors in the box[8] and they will know, for example, when a Posey vest is to be considered superior for patient safety over a two point soft restraint.  The simple truth is, this knowledge is not "common" knowledge.  Further, we can not be assured that any group of lay persons will know something about this subject, much less the subtleties of patient safety devices, patient restraints, and the implications of patient observation as a substitute or enhancement of restraints.

Unless the court can conclude that the lay people of this District have such

---

[8] This question assumes that the trial would be to a jury, as in State court.  The question as framed is appropriate because this court is applying State law.

knowledge discussed above as a common part of their everyday life, this argument fails.

Finally, this argument fails because the selection and use of patient restraints (or other more passive methods to assure patient safety such as observation) necessarily involves the use of medical training and judgment by a health care provider.  Miller faults the hospital in the persons of Dr. Conley and Nurse Sam[9] for not restraining or supervising James and preventing her fall.  Miller alleges that they should have supervised her and cared for her to prevent the fall.[10]  Whatever decision concerning observation and restraints made by either of these two health care practitioners was made based on (1) medical training, (2) medical experience and (3) with reference to the specific policies of this particular hospital.  For a fact finder to make a reasoned determination of whether they met the standard of care requires expert testimony on the standard of care for health care practitioners and whether these two individuals met that standard.  This assumes, of course, that an

---

[9] Nurse Sam was apparently the nurse who had charge of Sarah James at the time of her fall.  *See*, Deposition of Dr. Conley attached to the Opposition to Motion for Summary Judgement at page 54 - 55; Exhibit 1 to Opposition to Motion for Summary Judgement, page 22, Document 35.

[10] Complaint, Docket 1, p. 3, ¶ 7.  "The employees of the Defendant failed to adequately supervise, care for and prevent the deceased from getting out of bed or attempting to get out of bed."  *See also*, ¶ 10, p. 3 and the last ¶ 11, p. 4 (in Count II).

expert has also examined the hospital's policies on patient safety and the use of safety devices and restraints and opined whether the policies themselves were appropriate.

In sum, this argument fails because it both begs the question (assumes premises in the argument itself), and because the knowledge required to make a determination about which type, method or level of restraint to use in an attempt to assure patient safety requires training and experience not commonly held by lay persons.

    C.    <u>This case is a medical malpractice case as a matter of law</u>.

Miller relies exclusively upon <u>D.P. v. Wrangell General Hospital</u>[11] in support of her argument that this case is not a medical malpractice case and therefore no expert testimony is required.[12] Miller has failed to read footnote 17 on page 230 of that opinion, the last sentence of which reads:

> We note, however, that in so far as D.P. intends to argue issues that involve specialized medical decisions – <u>such as the appropriate level of physical restraints</u> or medication – <u>she can do so only through expert testimony</u>. (Emphasis added).

Thus, in the context of a case involving failure to supervise a patient who

---

[11] 5 P.3d 225 (Alaska 2000).

[12] <u>Id</u> at 228.

wandered out of a hospital, the Alaska Supreme Court has explicitly stated that choosing the appropriate level of physical restraints is a "specialized medical decision..." which requires the testimony of an expert on that issue: what is the appropriate type and level of restraint.

In discussing which types of cases may be considered "ordinary negligence" cases versus "medical malpractice" cases in D.P. v. Wrangell, the Alaska Supreme Court examined cases from other jurisdictions to support the holding that "failure to supervise" cases may be classified as "ordinary negligence" actions.[13] One of the cases noted in footnote 8 also points out that caution must be used when labeling a case one of negligent supervision, because leaving a patient "unsupervised" on a cart is a case that must be decided as a malpractice case with expert testimony, not as a case where lay persons could assess the evidence.[14]

Reifschneider is instructive on when expert testimony is (or should be) required in cases where falls occur within a hospital. In that case, the patient was admitted to the hospital in a confused state. After examination by a physician, the physician ordered the patient remain under observation while he attended to other

---

[13] See, D.P. v. Wrangell, *supra*, pp. 228 -229, and n. 8.

[14] Reifschneider v. Nebraska Methodist Hospital, 222 Neb. 782, 387 N.W.2d 486 (1986)

matters. The nurse assigned to observe the patient was called away by the charge nurse, and the charge nurse asked the patient's father to remain with the patient. The father left the patient unattended, and the patient fell off the "cart" on which she was lying and was injured.

The Nebraska Supreme Court first split the question into separate issues; whether restraints are required, and whether there was a negligent failure to adequately supervise the patient. Both issues were considered or examined in the context of the "common knowledge" exception to the rule that medical malpractice must be proved by expert testimony.

The plaintiff argued that " ... the question of restraint is custodial or nonmedical and within the grasp of knowledge of ordinary laymen, and, therefore, no expert testimony as to the defendants' duty to restrain is necessary."[15] The court disagreed, holding:

> This argument assumes that the ordinary trier of fact, judge or jury, is capable of assessing the status of an emergency room patient and determining whether or not restraints are needed. ... We believe expert testimony is required to establish a duty of the defendants to restrain a patient such as the plaintiff, and, absent such evidence, the motion [for summary judgment] was properly sustained as to that issue.[16]

---

[15] Id at 785.

[16] Id.

The court then considered the issue of alleged negligent supervision or failure to provide attendants. Once again, the court found that expert testimony was required to establish whether there was a duty to provide attendants to prevent falls.[17] While the court did remand the case for trial on the issue of the duty to provide attendants, the court felt compelled to do so because there was some evidence in the record that the hospital had a duty to provide such an attendant in those circumstances. That is not the case here. Miller has pointed to no evidence in the record that shows a duty by Mt. Edgecumbe Hospital to provide attendants in every room at all times to prevent falls.

In the instant case, Miller errs because she focuses on the fall and resultant injuries, and not on Mt. Edgecumbe's "... professional duty and whether it has been breached."[18] Like Gallant, the issue here is whether "the health care providers possessed and exercised the degree of knowledge or skill ordinarily exercised under the circumstances."[19] It may be obvious to a lay person that there was no one observing James, and that the bed alarm failed to adequately warn the nurse so

---

[17] Id at 786. "... this court cannot assume that a duty to provide attendants exists, and will not find that such knowledge is within the realm of ordinary experience ...".

[18] Gallant v. United States, 392 F. Supp.2d 1077, 1080 (D. Alaska 2005).

[19] Id.

he could intervene before she climbed over the bed rails, but it is not obvious to a lay person that there was a breach of a particular duty of professional care that gave rise to those two facts. Only expert testimony can establish those facts. That is, it is the underlying decision about the level of supervision or restraints that must be examined, not the result of that decision.

This argument fails as a matter of law. The Alaska Supreme Court has opined that where a plaintiff intends to argue issues that involve specialized medical decisions – such as the appropriate level of physical restraints or medication – she can do so only through expert testimony. Miller can not prevail in this argument over direct and controlling law to the contrary.

D.   Conclusion.

Both of Miller's arguments are without merit. Miller has failed to adduce or present any evidence establishing that there is a dispute as to any material fact. Miller has failed to show that she has expert testimony to establish the duty of care to James, that Mt. Edgecumbe Hospital breached that duty, or that any alleged breach lead to the injuries at issue here. She is required to do so by the Alaska Statutes governing medical malpractice case, and the law of Alaska. Lacking expert testimony on the duty, breach and causation of the injuries, Miller can not sustain her burdens at trial. The court should grant the Defendant's Motion for

Summary Judgment.

       Respectfully submitted, on March 6, 2006.

                            DEBORAH M. SMITH
                            Acting United States Attorney

                            s/ Daniel R. Cooper, Jr.
                            Assistant U. S. Attorney
                            222 West 7th Ave., #9, Rm. 253
                            Anchorage, AK 99513-7567
                            Phone: (907) 271-3376
                            Fax: (907) 271-2344
                            E-mail: Daniel.Cooper@usdoj.gov
                            AK #8211109

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2006,
a copy of the foregoing Reply to Opposition
to Motion for Summary Judgment  was served
electronically on Michael Jude Pate via e-mail

s/ Daniel R. Cooper, Jr.